2025 IL App (4th) 241299-U

NOS. 4-24-1299, 4-24-1300, 4-24-1301, 4-24-1302 cons.

<table>
<tr><td>NOTICE<br>This Order was filed under<br>Supreme Court Rule 23 and is<br>not precedent except in the<br>limited circumstances allowed<br>under Rule 23(e)(1).</td><td>IN THE APPELLATE COURT<br><br>OF ILLINOIS<br><br>FOURTH DISTRICT</td><td>FILED<br>January 28, 2025<br>Carla Bender<br>4th District Appellate<br>Court, IL</td></tr>
</table>

| | | |
|---|---|---|
| *In re* Z.S., I.S., K.S., and M.S., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Peoria County |
| | ) | Nos. 22JA146 |
| | ) | 22JA147 |
| | ) | 22JA148 |
| (The People of the State of Illinois, | ) | 22 JA149 |
|     Petitioner-Appellee, | ) | |
|     v. | ) | Honorable |
| Joshua S., | ) | Mark E. Gilles, |
|     Respondent-Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's fitness and best-interest determinations were not against the manifest weight of the evidence.

¶ 2    Respondent, Joshua S., appeals the trial court's judgment terminating his parental rights to his minor children, Z.S. (born in August 2022), I.S. (born in February 2021), K.S. (born in February 2017), and M.S. (born in December 2012). On appeal, respondent challenges both the court's unfitness finding and best-interest determination. We affirm.

¶ 3                              I. BACKGROUND

¶ 4    As an initial matter, we note that although each minor was assigned a separate trial court case number below, the relevant pleadings are practically identical and were filed in

each case simultaneously and the trial court conducted a single, combined hearing on the State's termination petitions. We therefore find it unnecessary to differentiate between the individual cases for each minor when setting forth the relevant factual background.

¶ 5 On August 17, 2022, the State filed a petition for adjudication of wardship with respect to each minor, alleging they were neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)) because their environment was injurious to their welfare. Specifically, the State alleged the minors were neglected because (1) Z.S. tested positive for cocaine at birth, (2) respondent refused to complete a drug screening and admitted to "taking an unknown pill 10 days prior," (3) the minors had no bed to sleep in, and (4) respondent had been "indicated" by the Illinois Department of Children and Family Services (DCFS) on two prior occasions.

¶ 6 On November 1, 2022, the minors' mother, who is not a party to the instant appeal and is now deceased, stipulated to the allegations in the neglect petition, and the trial court entered an adjudicatory order finding the minors neglected. The same day, the court also entered a dispositional order finding respondent unfit due to a "lack of cooperation with DCFS, substance abuse issues, [and] prior DCFS indications" and making the minors wards of the court. The court admonished respondent to cooperate with DCFS, "comply with the terms of the service plans, and correct the conditions which require the child[ren] to be in care, or risk termination of parental rights."

¶ 7 In May 2024, the State filed a petition to terminate respondent's parental rights. The State alleged, in relevant part, that respondent was an unfit parent within the meaning of section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2022)) because he failed to make reasonable progress toward the minors' return during any nine-month period—

specifically, April 3, 2023, to January 3, 2024—following the adjudication of neglect.

¶ 8    On August 19, 2024, the trial court conducted a fitness hearing and, after finding respondent unfit, immediately proceeded to a best-interest hearing. Respondent did not appear at either hearing or present any evidence. Cheyenne Denoyer, the minors' caseworker during the relevant nine-month period, was the only witness to testify at the hearings.

¶ 9    At the outset of the fitness hearing, the trial court took judicial notice of "all relevant prior petitions, orders, and pleadings[,] barring any hearsay." Denoyer testified that respondent's service plan required him to: (1) complete a mental health evaluation and attend individual counseling sessions; (2) complete a substance abuse assessment, comply with any recommended treatment, and complete two random drug screenings per month; (3) maintain adequate housing and employment; and (4) consistently attend scheduled visits with the minors. According to Denoyer, respondent informed her in July 2023 that he was living with his mother in Bloomington, Illinois, and the home passed a "safety check" the following month. Respondent told Denoyer that living with his mother "was a very short-term and temporary solution and that he was actively trying to seek stable housing elsewhere." Denoyer testified that respondent had maintained adequate employment throughout the relevant period. Denoyer referred respondent for mental health counseling that was scheduled to begin in June 2023. However, respondent failed to attend the scheduled appointment and was unsuccessfully discharged as a result. He was re-referred in October 2023, completed an evaluation the following month, and then began attending counseling sessions. A "Permanency Hearing Report" filed in April 2024 shows that respondent was again unsuccessfully discharged from counseling in January 2024 "due to extreme resistance to counseling." Denoyer testified that she referred respondent for a substance evaluation in April 2023, but he did not complete it until September 2023. According to the

substance abuse evaluation summary, respondent met the "diagnostic criteria for cannabis use disorder, moderate[,] and alcohol use disorder, moderate." Denoyer testified that respondent completed only 5 drug screenings out of the required 20. Of those five screenings, he tested positive for marijuana all five times and alcohol once. According to Denoyer, respondent was entitled to visitation with the minors once per week until November 2023, when visitation was reduced to once per month. Denoyer testified that respondent missed 12 out of approximately 30 scheduled visits between April 2023 and January 2024, but she also indicated that the visits he did attend were "generally *** a very positive experience."

¶ 10    Following the parties' arguments, the trial court found the State had proven respondent unfit by clear and convincing evidence for failing to make reasonable progress towards the minors' return during the relevant nine-month period.

¶ 11    At the outset of the best-interest hearing, the trial court indicated it had reviewed the best-interest report prepared in advance of the hearing. According to the report, since the minors came into care in August 2022, they had lived with their "paternal grandmother, two different licensed traditional foster homes, and [their] paternal aunt" and her fiancé. The minors had been living in their current placement with their paternal aunt and her fiancé, along with two of the foster parents' children, since June 2024. Denoyer indicated in the report that the foster parents were meeting the minors' "medical, educational, and mental health needs." The foster parents were also meeting their "basic needs of food, shelter, health, and clothing." Denoyer testified that she visits the minors in their current placement "[a]t least biweekly if not more often." She had observed the children to be bonded with the foster parents. The three eldest children referred to their foster mother as "Titi" and "view[ ] her as a motherly figure." Z.S., who was still too young to speak, "seeks out [his foster parents] for comfort when in distress."

- 4 -

Denoyer testified that M.S. explicitly told her that "she really loves living [in her current placement] and that she doesn't want to leave." According to the best-interest report, the foster parents ensured "that the children have a relationship with other extended family members, which is something the children have not fully experienced since residing with their grandmother near the end of 2022 and early 2023." The foster parents had also expressed their willingness to provide the minors with permanency through adoption. Denoyer further testified that "the foster parents do not limit, in terms of phone calls, their engagement with [respondent]." Ultimately, Denoyer opined in the best-interest report and at the hearing that it was in the minors' best interest to terminate respondent's parental rights and allow them to be adopted by their foster parents.

¶ 12       Following the parties' arguments, the trial court found the State had proven by clear and convincing evidence that termination of respondent's parental rights was in the minors' best interest.

¶ 13       Respondent filed a timely notice of appeal in each of the minors' cases, and we subsequently granted respondent's motion to consolidate the appeals.

¶ 14       This appeal followed.

¶ 15                         II. ANALYSIS

¶ 16       On appeal, respondent argues that the trial court erred in (1) finding him unfit and (2) ruling that termination of his parental rights was in the minors' best interest.

¶ 17                      A. Unfitness Finding

¶ 18       First, respondent argues the trial court erred in finding him unfit for failing to make reasonable progress towards the minors' return during the nine-month period from April 3, 2023, to January 3, 2024. Specifically, respondent argues he "made some progress toward his

service plan goals, despite challenges in consistently adhering to all requirements." He highlights his reportedly "positive overall" visits with the minors, his ability to maintain adequate housing and employment, and the fact that he completed a mental health and substance abuse evaluation. "A reviewing court will not reverse a trial court's fitness finding unless it was contrary to the manifest weight of the evidence, meaning that the opposite conclusion is clearly evident from a review of the record." *In re A.L.*, 409 Ill. App. 3d 492, 500 (2011).

¶ 19       Section 2-29 of the Juvenile Court Act (705 ILCS 405/2-29 (West 2022)) "delineates a two-step process in seeking termination of parental rights involuntarily." *In re J.L.*, 236 Ill. 2d 329, 337 (2010). First, the State must prove by clear and convincing evidence that the parent is unfit. *In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). In making such a determination, the court considers whether the parent's conduct falls within one or more of the unfitness grounds described in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re D.D.*, 196 Ill. 2d 405, 417 (2001). Under the Adoption Act, an unfit parent includes any parent who fails to make reasonable progress toward his or her child's return during any nine-month period following the neglect adjudication. 750 ILCS 50/1(D)(m)(ii) (West 2022). In addressing section 1(D)(m) of the Adoption Act, our supreme court has stated the following:

> "[T]he benchmark for measuring a parent's 'progress toward the return of the
> child' under section 1(D)(m) of the Adoption Act encompasses the parent's
> compliance with the service plans and the court's directives, in light of the
> condition which gave rise to the removal of the child, and in light of other
> conditions which later become known and which would prevent the court from
> returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d 181, 216-17
> (2001).

This court has described reasonable progress as "an 'objective standard,' " which exists "when 'the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody.' " (Emphasis in original.) *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88 (quoting *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991)).

¶ 20        Here, the minors initially came into care due, in part, to concerns relating to respondent's substance abuse and his refusal to complete drug screenings. Denoyer, the minors' caseworker during the relevant nine-month period, testified that respondent's service plan required him to: (1) complete a mental health evaluation and attend individual counseling sessions; (2) complete a substance abuse assessment, comply with any recommended treatment, and submit to two random drug screenings per month; (3) maintain adequate housing and employment; and (4) consistently attend scheduled visits with the minors. We agree with respondent that the record shows he made "some" progress with respect to his required services during the relevant nine-month period. For instance, Denoyer testified that respondent was able to secure adequate housing and employment, his visits with the minors were "generally *** a very positive experience," and he completed a mental health and substance abuse evaluation. However, the progress respondent made was not sufficient to clearly demonstrate that it was "reasonable" pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2022)). Although respondent completed a substance abuse and mental health evaluation, he did not do so until, respectively, 6 and 10 months after the initial referrals, and he was unsuccessfully discharged from mental health counseling in January 2024 "due to extreme resistance to counseling." Moreover, respondent completed only 5 drug screenings out of a required 20, and he tested positive for marijuana all five times and alcohol once. Respondent was

also inconsistent in visiting with the minors, missing 12 out of approximately 30 scheduled visits between April 2023 and January 2024.

¶ 21 Based on this evidence, we cannot say respondent's progress was " 'sufficiently demonstrable and of such a quality that the court, in the *near future*, [would have been] able to order the child returned to parental custody.' " (Emphasis in original.) *F.P.*, 2014 IL App (4th) 140360, ¶ 88 (quoting *L.L.S.*, 218 Ill. App. 3d at 461). During the relevant nine-month period, respondent made essentially no progress towards completion of his mental health services, failed to pass a single drug screening—despite the children coming into care partly due to his substance abuse issues—and was inconsistent in visiting with the minors. Accordingly, we find the trial court's unfitness finding was not against the manifest weight of the evidence.

¶ 22 B. Best-Interest Finding

¶ 23 Next, respondent argues the trial court erred in finding termination of his parental rights was in the minors' best interests. Specifically, respondent asserts that the "court failed to consider adequately that, while [he] may not have met every requirement fully, his engagement with services highlights his dedication to reunification. Given his progress, additional time and support could reasonably allow him to meet the children's needs." We will not reverse a best-interest determination absent a finding it was against the manifest weight of the evidence, which, again, "mean[s] that the opposite conclusion is clearly evident from a review of the record." *A.L.*, 409 Ill. App. 3d at 500.

¶ 24 If the State satisfies its burden of proving the respondent unfit, the termination proceedings advance to the second stage, where the State must prove by a preponderance of the evidence that termination of the respondent's parental rights is in the minor's best interest. 705 ILCS 405/2-29(2) (West 2022). At the best-interest stage, the focus shifts from the parent to the

child, and the issue is "whether, in light of the child's needs, parental rights should be terminated." (Emphasis omitted.) *In re D.T.*, 212 Ill. 2d 347, 364 (2004). Thus, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *Id.* Section 1-3(4.05) of the Juvenile Court Act lists the best-interest factors for the court to consider, in the context of the minor's age and developmental needs, when making its best-interest determination: (1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties; (4) the child's sense of attachments; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence; (8) the uniqueness of every family and child; (9) the risks associated with substitute care; and (10) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05) (West 2022).

¶ 25     Here, the evidence presented at the best-interest hearing shows that the minors had been in four different placements since coming into care in August 2022. Their current placement with their paternal aunt and her fiancé is the first that had been able to meet all the minors' needs. Denoyer testified that she had observed the minors to be bonded with their foster parents. M.S. even informed Denoyer that "she really loves living [in her current placement] and that she doesn't want to leave." Moreover, the foster parents ensured "that the children have a relationship with other extended family members, which is something the children have not fully experienced since residing with their grandmother near the end of 2022 and early 2023." The foster parents further ensured that the minors are able to maintain a relationship with respondent, and they had expressed their willingness to provide the minors with permanency through adoption. Based on this evidence, we cannot say that the trial court's best-interest determination was against the manifest weight of the evidence.

¶ 26　　　　In closing, we note that respondent's argument concerning his progress with his service plan is unpersuasive. As stated, at the best-interest stage of termination proceedings, the focus shifts from the parent to the child, which means "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. In other words, respondent's compliance with his service plan is irrelevant when considering the best interests of the minors. Moreover, as discussed in the preceding section, respondent made essentially no progress towards completion of his mental health services, and he failed to pass a single drug screening from April 2023 to January 2024. In light of the minors' need for permanence and the fact that they had been placed in four different foster homes in approximately two years, it was not unreasonable for the trial court to conclude that giving respondent some indeterminate amount of time to comply with his service plan was not in the minors' best interests. Accordingly, we find the trial court's best-interest determination was not against the manifest weight of the evidence.

¶ 27　　　　　　　　　　　　　　III. CONCLUSION

¶ 28　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 29　　　　Affirmed.